IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **OLUWATOSIN TAYLOR**, | * |
| Plaintiff, | * |
| v. | * Civil No. **21-1210 PJM** |
| | * |
| **WELLS FARGO BANK** *et al.*, | * |
| | * |
| Defendants. | |

**MEMORANDUM OPINION**

For over nine years, Plaintiff Oluwatosin Taylor was employed by Defendant Wells Fargo Bank ("Wells Fargo") at its Takoma Park, Maryland branch. According to Taylor, despite exemplary performance, she was terminated following a personnel dispute. Thereafter, she brought this action against Wells Fargo and six of its employees, making various common law claims and employment discrimination claims. Specifically, she contends that her termination constituted national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). *Id.*

Wells Fargo has filed a Motion for Judgment on the Pleadings, ECF No. 30. The motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court will **GRANT** Wells Fargo's Motion for Judgment on the Pleadings.

**I.**

Beginning in 2011, Wells Fargo employed Taylor, a Nigerian national, as a Branch Manager, Level I, at its Takoma Park, Maryland branch. Compl., ECF No. 1, ¶ 13. In August 2012, Taylor was promoted to Branch Manager, Level II, and in April 2015, she was promoted to Branch Manager Level, III. *Id.* ¶¶ 15–16. Taylor avers that she consistently received satisfactory job ratings and was given multiple awards for her excellent performance. *See id.* ¶¶ 28–35.

According to the Complaint, in or about November 2018, a dispute arose between an assistant bank manager, who reported directly to Taylor, and a bank teller, who reported directly to the assistant bank manager. *Id.* ¶¶ 17–19. Taylor was not present at the branch when this dispute occurred but was made aware of the situation by the assistant manager. *Id.* ¶ 19. Taylor advised the assistant manager to report the incident to Wells Fargo's Employee Relations division. *Id.* ¶ 20. When Taylor returned to the branch the following week, she took corrective disciplinary action against the bank teller involved in the dispute. *Id.* ¶ 22. She avers that the Employee Relations division instructed her to do so. *Id.* ¶ 21.

Taylor alleges that, following the issuance of the corrective action against the bank teller, she received an informal warning from Wells Fargo. *Id.* ¶ 23. She claims that she intended to protest the warning but withdrew her protest after discussions with members of the Employee Relations division. *Id.* ¶¶ 36–39. Despite dropping her opposition to the informal warning, Taylor was contacted by the Employment Relations division regarding an internal investigation of the November 2018 incident. *Id.* ¶ 56.

Following additional meetings with the Employee Relations division, on April 1, 2020, Taylor was terminated by Wells Fargo, allegedly because she violated bank policy with respect to retaliation. *Id.* ¶ 60. Taylor protested her termination in a letter to Wells Fargo's CEO. *Id.* ¶ 65. On May 4, 2020, she was informed that her termination would be upheld. *Id.* ¶ 67. After receiving that notice, Taylor communicated the events of her termination to a member of the Employee Relations division. *Id.* ¶ 71. On June 24, 2020, Taylor received a letter from the Employee Relations division, informing her once again that her termination would be upheld. *Id.* ¶ 73.

Taylor filed a charge with the Equal Employment Opportunity Commission ("EEOC") which issued her a right-to-sue letter on February 19, 2021. ECF No. 1-1. Taylor filed this suit in this Court on May 17, 2021. She alleges, in part, that the informal warning and investigation led to unfair

treatment. *Id.* ¶ 79–80. She believes this treatment was discriminatory because other non-Nigerian Wells Fargo employees involved in the dispute were not terminated. *Id.* ¶ 80.

On July 8, 2021, Wells Fargo moved to partially dismiss the complaint, asking the Court to dismiss all of Taylor's claims except for her Title VII national origin discrimination claim. ECF No. 17. On October 21, 2021, by oral opinion following a hearing, the Court granted the motion. ECF Nos. 24, 25. On November 8, 2021, Wells Fargo filed the motion currently before this Court.

## II.

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any "written instruments" attached to those filings, as well as any documents that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). In resolving a Rule 12(c) motion on the basis of the underlying merits, the court applies the same standard as the standard for a Rule 12(b)(6) motion. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal citations omitted). To survive Rule 12(b)(6) scrutiny, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). In evaluating a Rule 12(b)(6) motion to dismiss, the Court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual inferences in its favor, and judgment is

appropriate only if the moving party establishes the nonmoving party "would not be entitled to relief under any legal theory which might plausibly suggested by the facts alleged." *Edwards*, 178 F.3d at 243 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

### III.

#### A.

Wells Fargo contends that Taylor's national origin discrimination claim under Title VII fails because it is time barred. Mem. in Supp. of Mot. for J. on Pleadings, ECF No. 30-1, at 3.

Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff must meet certain statutory requirements before filing her case in federal court. The statute requires that a plaintiff file her charge of discrimination with the EEOC or appropriate agency before proceeding to court. 42 U.S.C. § 2000e-5(e)(1). The charge must be filed within a specified time "after the alleged unlawful employment practice occurred." *Id.* In Maryland, a deferral state, a Title VII claim of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001). Taylor failed to do so. The Court thus agrees with Wells Fargo that Taylor's claim is time barred.

Taylor filed her Charge on February 17, 2021. ECF No. 30-1, Ex. A. Consequently, any arguably actionable conduct arising before April 23, 2020 would be untimely under the 300-day rule. In her Charge, Taylor states that she received an informal warning on January 24, 2019 and was terminated on April 1, 2020. Wells Fargo argues that because Taylor's termination falls outside of the 300-day rule, it is untimely. Mem. at 4. According to Taylor, the 300-day clock did not begin to run until June 24, 2020, when she received the written communication from Wells Fargo's Employee Relations division that her termination would be upheld. Resp. in Opp'n to Def. Mot. for J. on Pleadings, ECF No. 31, at 7. The Court disagrees.

The Supreme Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," such that each adverse employment decision constitutes a separate actionable practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). Therefore, Taylor can only file a charge to cover discrete acts that occurred within the appropriate time period, i.e., only conduct arising after April 23, 2020. *See id.* ("While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable."). In *Morgan*, the Supreme Court explained that discrete acts occurring outside the limitations period remain time-barred even if they are part of a series of related actions, some of which occurred within the limitations period. *Id.* at 113, 122 S. Ct. 2061. But with respect to employee appeals of adverse employment action, it is the time of the initial employment decision was made and communicated that counts; that is what triggers the commencement of the limitations period "despite the pendency of the internal appeal and possibility of a reversal of the decision." *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) (citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 856 (3d Cir. 2000).

Wells Fargo cites *Mezu v. Morgan State University*, 367 F. App'x 385 (4th Cir. 2010). In that case, a professor brought a discrimination claim against her employer university after she was denied a promotion to the position of tenured professor. 367 F. App'x at 385, 387. Although the plaintiff appealed the decision within the 300-day limitations period, the Fourth Circuit, in an unpublished decision, determined that the only discrete adverse employment action was the decision not to promote and that the appeal was not a new, separate act of discrimination. *Id.* at 389. *See also Delaware State Coll. v. Ricks*, 449 U.S. 250, 261–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ("we have already held

that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods").

As with the plaintiff in *Mezu*, Taylor has not alleged a discrete employment action that occurred within the limitations period. She points to a number of allegedly discriminatory incidents—failure to meaningfully investigate the circumstances of her termination and declarations upholding her termination—as occurring within the limitations period, and argues that these incidents create discrete actionable Title VII claims. Opp'n at 10–11. These incidents, however, all relate to the initial employment decision, her termination, which occurred on April 1, 2022, outside the limitations period.

**B.**

Even assuming Taylor's claim for national origin discrimination was timely, it would still fail because she has not plausibly alleged a Title VII discrimination claim.

To establish a *prima facie* claim for race, color, or national origin discrimination based on disparate treatment, a plaintiff must present facts demonstrating: (1) the plaintiff's membership in a protected class; (2) the plaintiff's satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). When the claim is discriminatory termination, the elements are slightly different: a plaintiff must then present facts demonstrating: (1) the plaintiff's membership in a protected class; (2) that the plaintiff was terminated; (3) that at the time of the termination, the plaintiff was performing at a level that met the employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant from outside the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

Taylor has alleged sufficient facts to establish two elements of a *prima facie* case: (1) she is a woman of Nigerian origin, and (2) she was terminated. As to the third element, Taylor has set forth several factual allegations regarding her "exemplary" performance at Wells Fargo, suggesting that she

6

met Wells Fargo's expectations at the time of her termination, notwithstanding her handling of the dispute between her subordinates. The Court will assume, arguendo, that Taylor has successfully pled the third element.

The fourth requirement for establishing a prima facie case of discriminatory termination—whether Taylor has alleged sufficient facts that she was treated differently from similarly situated employees outside of her protected class or that her position was filled by a similarly qualified applicant outside her protected class—is where her case falters. *See White*, 375 F.3d at 295; *King*, 328 F.3d at 149. With respect to this element, a plaintiff must allege specific facts supporting the allegation giving rise to an inference of discrimination. Taylor has not plausibly done so.

"The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). Here, where the alleged adverse employment action is Taylor's termination (and the denial of her subsequent protests), Taylor would have to identify similarly-situated employees of a national origin different from hers, who engaged in conduct similar to hers, who were not terminated. *See Gordon v. Holy Cross Hosp. Germantown, Inc.*, 385 F. Supp. 3d 472, 480 (D. Md.), *aff'd*, 780 F. App'x 84 (4th Cir. 2019). Alternatively, she must allege that a similarly-situated person who was not of Nigerian origin was hired to fill her position after she was terminated.

"'Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020) (quoting *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017)). Taylor's complaint includes only conclusory allegations that her termination was discriminatory because "no non-Nigerian branch managers have ever been terminated for following the directions of Defendant Wells Fargo's own ER division and after no investigation was conducted

7

by the parties involved in the firing," while other employees involved in the dispute, all supposedly American nationals, were not terminated. Compl. ¶ 62. In addition, she claims, "on information and belief," that she was replaced by a similarly qualified person outside her protected class. *Id.* ¶ 92. Taylor offers no further detail as to why or how other Wells Fargo employees were similarly situated to her. This lack of factual specificity dooms her claim of national origin discrimination.

Beyond failing to specifically plead facts regarding comparators, Taylor makes no allegations regarding Wells Fargo's discriminatory intent, which she simply assumes to have been the case. She has not alleged that anyone involved in her termination ever made any discriminatory comments to her or anyone else. She makes no allegations whatsoever regarding any evidence surrounding her termination that might give rise to an inference of discrimination. She merely asserts that other non-Nigerian employees were not terminated. Even taken in the light most favorable to Taylor, these allegations do not state a right to relief beyond the speculative level. The Court finds that Taylor has failed to plead a *prima facie* case of employment discrimination.

### C.

Taylor tries to invoke equitable tolling based on the proposition that Wells Fargo engaged in intentional misconduct that caused her to miss her deadline. S*ee, e.g., Eaton v. Digital Equipment Corporation*, 16 F. App'x 95 (4th Cir. 2010). The allegations in the Complaint, however, clearly reveal that Taylor was aware of the facts supporting her Title VII claim at the time of her termination because she believed her termination was discriminatory when it occurred. In her Opposition to the pending motion, Taylor suggests that equitable tolling is appropriate because Wells Fargo's review of her termination amounted to intentional deceptive misconduct. This argument is as flawed as the last. Taylor sets forth no facts suggesting that Wells Fargo engaged with her protest in any way that might have caused her to miss her filing deadline or that Wells Fargo otherwise concealed the existence of a possible cause of action. In short, no grounds exist for tolling the statute of limitations.

## IV.

For the foregoing reasons, Wells Fargo's Motion for Judgment on the Pleadings, ECF No. 30, is **GRANTED**.

A separate Order will **ISSUE**.

Date: January 20, 2022

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE